UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD WATTERSON,<br><br>Plaintiff,<br><br>v.<br><br>JULIE FRITCHER,<br><br>Defendant. | No. 1:17-cv-01020-DAD-JLT<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND ORDERING PLAINTIFF TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED<br><br>(Doc. No. 20) |

On May 29, 2018, counsel filed a motion for summary judgment on plaintiff's behalf. (Doc. No. 20.) Defendant, who is proceeding pro se in this action, has not responded to this motion. On July 3, 2018, the court held a hearing on the motion, at which attorney Jack Duran Jr. appeared on behalf of plaintiff. No appearance was made by defendant. For the following reasons, plaintiff's motion for summary judgment will be denied. Additionally, plaintiff will be ordered to show cause why this action should not be dismissed.

**BACKGROUND**

At its core, this action is a dispute concerning who is appropriately the holder of the assignment to Lot #28 on the Lone Pine Indian Reservation. Plaintiff alleges in his complaint that he is the rightful holder of the assignment to Lot #28. (Doc. No. 1 at ¶ 7.) This lot is not further identified or described in the operative pleading.

1

The complaint alleges as follows: Lot #28 was originally purchased by the Bureau of Indian Affairs ("BIA") pursuant to the Trust Agreement and Rehabilitation Grant to Unorganized Bands (the "Agreement"), which was approved on April 17, 1939 by the Secretary of the Department of the Interior. (*Id.* at ¶ 10.) Pursuant to the Agreement, the unorganized bands of Indians in the Owens Valley organized into the Bishop, Big Pine, and Lone Pine Reservations, and enacted the Owens Valley Ordinance (the "Land Ordinance") on February 1, 1962. (*Id.* at ¶ 11.) The Land Ordinance governs the lands acquired on behalf of the members of the three reservations, and sets the terms and conditions of acquiring land allotments on those reservations. (*Id.*) The Land Ordinance is effectuated by a Board of Directors whose duties are to ensure tribal member compliance with the Land Ordinance. (*Id.* at ¶ 11.) Land assignments are not inheritable under the Land Ordinance. (*Id.* at ¶ 13.) However, the holder of a land assignment may designate a beneficiary to receive the assignment upon the holder's death. (*Id.*) That beneficiary is then to be given "preference in granting the assignment." (*Id.*)

The Land Ordinance validated land assignments in existence at the time of its enactment. (*Id.* at ¶ 12.) Plaintiff's grandfather Pete Thomas was living on Lot #28 at the time the Land Ordinance was enacted, and therefore received an assignment to Lot #28. (*Id.*) Upon Pete Thomas' death, the Lone Pine General Council allegedly voted to assign Lot #28 to plaintiff on June 3, 1987. (*Id.* at ¶ 14.) On the same date, the Board of Directors allegedly ratified the assignment. (*Id.* at ¶ 15.) The complaint asserts that defendant Fritcher[1] has therefore been

---

[1] Plaintiff's complaint contains allegations concerning another person, Madge Miller, along with people working on her behalf to allegedly trespass on Lot #28. (Doc. No. 1 at ¶¶ 8–9.) Plaintiff's counsel explained at the hearing than any reference to Ms. Miller in the complaint was in error, and that she was not intended to be named as a defendant in this case. Counsel further explained that the Does named in the complaint were intended to be any individuals who might be living with Ms. Fritcher. While this is not what is alleged in the operative complaint, as a general rule, the use of "Doe" defendants is not favored in federal court. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiffs may nevertheless "be given an opportunity through discovery to identify the unknown defendants." *Id.*; *Malibu Media, LLC v. Doe*, 319 F.R.D. 299, 302 (E.D. Cal. 2016); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). However, discovery in this case has now closed, and plaintiff has not identified any additional defendants. Plaintiff will therefore be directed to show cause as to why the court should not now dismiss any Doe defendants from this matter. *See Urias v. Quiroz*, 895 F. Supp. 262, 264 (S.D. Cal. 1995) (noting "[t]he court has the authority to dismiss the Doe defendants *sua sponte*").

trespassing on the property since at least that date, i.e., for approximately the last thirty years. (*Id.* at ¶ 16.) The complaint alleges the following claims: (1) federal statutory trespass in violation of 25 C.F.R. §§ 162.106(a) and 163.291; (2) common law trespass; (3) violation of California Civil Code § 3481, nuisance; (4) a state law claim for conversion; and (5) declaratory relief pursuant to 28 U.S.C. § 2201 that Lot #28 is assigned to plaintiff. (*Id.* at ¶¶ 19–35.) [2]

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including

---

[2] Plaintiff's motion for summary judgment states that the court "should grant Plaintiff's *single claim* for declaratory relief and declare that Assignment #28 was assigned to Watterson . . ." (Doc. No. 20 at 11.) Plaintiff's counsel clarified at the hearing that plaintiff did not intend to abandon any claims, and in fact seeks not just declaratory relief but defendant's ejectment from the premises. The complaint, however, alleges no separate cause of action for ejectment, but does state plaintiff seeks "an order of Ejectment of Defendants from the assignment." (Doc. No. 1 at 8.) Ejectment is typically a separate cause of action from trespass, with different elements. *See, e.g.*, *C&C Props. v. Shell Pipeline Co.*, No. 1:14–cv–01889–DAD–JLT, 2018 WL 3014075, at *4–6 (E.D. Cal. June 14, 2018) (separately addressing ejectment and trespass); *Boynton v. United States*, No. 2:11–cv–00623–MCE–EFB, 2017 WL 2813212, at *6 n.7 (E.D. Cal. June 29, 2017) (noting different remedies may be available in ejectment and trespass actions); *United States v. Penebaker*, No. C06-06287 MJJ, 2007 WL 1655595, at *5 (N.D. Cal. June 7, 2007) (noting "the essential elements of an action for ejection are ownership by plaintiff disclosing a right to possession and a withholding thereof from the plaintiff," while trespass involves "the intentional use of the property of another without authorization and without privilege"). Further, an order of ejectment is not necessarily the appropriate remedy for the tort of trespass. *See, e.g.*, *United States v. Imperial Irrigation Dist.*, 799 F. Supp. 1052, 1068–69 (S.D. Cal. 1992) (noting that ejectment is not an automatic remedy for trespass, and construing a request for ejectment as seeking a permanent injunction, subject to equitable concerns). At the hearing of this motion, plaintiff requested that leave be granted to amend the complaint to allege a cause of action for ejectment. However, as discussed below, the court is skeptical that this action should be permitted to proceed at all. Plaintiff will be allowed to show cause as to why leave to amend is not futile here and should be granted.

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "[a] district court may not grant an unopposed motion for summary judgment solely because the opposing party has failed to file an opposition." *Canal Ins. Co. v. YMV Transp., Inc.*, 867 F. Supp. 2d 1099, 1103–04 (W.D. Wash. 2011); *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("A local rule that requires the entry of summary judgment simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist, would be inconsistent with Rule 56, hence impermissible under Rule 83."); *White by White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986) ("Even in the absence of opposing affidavits, summary judgment is inappropriate where the movant's papers are insufficient on their face.").

**ANALYSIS**

Before turning to the evidence submitted on summary judgment, the court must address plaintiff's requests for judicial notice of various documents. Plaintiff has failed to provide any of the documents of which he requests judicial notice be taken. (*See, e.g.*, Doc. No. 20-3 at 2) (requesting judicial notice of a 1947 land assignment to Pete Thomas, and noting simply the document "can be easily obtained upon request from the Owens Valley Board of Trustees or Lone Pine Indian Tribe"). A court must take judicial notice if requested by a party "and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Courts regularly refuse to take judicial notice of documents that are not supplied by the party seeking judicial notice. *See, e.g.*, *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15-1012-JCC, 2016 WL 5944564, at

4

*1–2 (W.D. Wash. Oct. 13, 2016) ("The Court further rejects [defendant's] suggestion that it is the Court's burden to comb the records of a separate court system to determine whether his assertion is legitimate."); *In re Hilliard Dev. Corp.*, 238 B.R. 857, 864 (Bankr. S.D. Fla. 1999) ("[T]he Court will not rummage through the Court files and take notice of those documents requested absent those documents being supplied to the Court. It is not this Court's function to lay a record for the lawyers involved in this case.") (quoting *In re Tyrone F. Conner Corp.*, 140 B.R. 771, 782 (Bankr. E.D. Cal. 1992)); *see also Howerton v. Earthgrains Baking Cos. Inc.*, No. 1:13–CV–01397 AWI SMS, 2015 WL 3657748, at *2 (E.D. Cal. June 11, 2015) ("The party requesting judicial notice should also supply the court with the source material needed to determine whether the request is justified."). Since the documents plaintiff requests the court take notice of were not provided to the court, plaintiff's requests for judicial notice are denied.

Second, plaintiff filed an index of exhibits in support of the statement of undisputed material facts. The index lists the following nine exhibits:

1. Declaration of Leonard Watterson
2. Declaration of Jack Duran
3. 1947 Land Assignment to Pete Thomas
4. 1962 Owens Valley Land Ordinance
5. 1962 Owens Valley Board of Trustees ratification of 1947 certification of assignment to Pete Thomas upon adoption of 1962 Land Ordinance
6. 1974 Beneficiary Designation of Leonard Watterson as Pete Thomas beneficiary for Assignment 28
7. 1993 Owens Valley Board meeting Minutes stating at #3 that Assignment #28 was assigned to Leonard Watterson on December 11, 1974
8. Minutes Lone Pine General Council, June 3, 1987
9. Owens Valley Board Assignment of Parcel #28 to L Watterson, June 3, 1987, Meeting minutes

(Doc. No. 20-2.) However, none of these exhibits were actually filed on the court's docket in support of plaintiff's summary judgment motion. Following the hearing on the motion, plaintiff filed additional exhibits on the court's docket—presumably the omitted exhibits that plaintiff's

counsel wishes the court to consider in reviewing the motion. (Doc. No. 26.) Plaintiff did not seek or receive leave to file these exhibits belatedly, and does not appear to have served them on the defendant. Nevertheless, in the interest of expediting resolution of the pending motion, the court has considered these belatedly-filed exhibits. However, evidence does not demonstrate plaintiff is entitled to judgment as a matter of law.

Plaintiff's central claim to his right to possess Lot #28 is that it was granted to him by the Lone Pine General Council on June 3, 1987. (Doc. No. 1 at ¶ 14.) Plaintiff avers in a declaration that his grandfather held the original assignment to Lot #28, and that on July 6, 1974 he was designated to receive Lot #28 upon his grandfather's death. (Doc. No. 26 at ¶ 7.) Plaintiff declares that his grandfather died on December 11, 1975, at which time, "as his sole beneficiary, I received [Lot] #28." (*Id.* at ¶ 8.) According to plaintiff's declaration, the effect of the June 3, 1987 board meeting was to enlarge his assignment to Lot #28 from one to three acres. (*Id.* at ¶ 10.)

One of the newly-submitted exhibits is a copy of the 1962 Land Ordinance, which governs the assignment of lots on the Lone Pine Reservation. (*See* Doc. No. 26 at 18–24) (hereafter referred to as "1962 Land Ordinance"). The 1962 Land Ordinance states that an application for an assignment of land shall be filed with the local Indian Committee. (*See* 1962 Land Ordinance, Art. 2, Sect. A(1).) Following a period for notice and objections, the Indian Committee will submit its recommendation to the Owens Valley Board of Trustees. (*Id.* Art. 2, Sect. A(1)(B).) The Board of Trustees then reviews the application and, if it approves the application, transmits it to the Area Director of the BIA for her review and consideration. (*Id.* Art. 2, Sect. B(1)–(3).) The Board of Trustees then ultimately "[n]otifies the Chairman of respective local Indian Committee of the action taken by the Owens Valley Board of Trustees and the Area Director." (*Id.* Art. 2, Sect. B(4).)

This document clearly indicates that all land assignments must ultimately receive approval of three different bodies: the local Indian Committee, the Board of Trustees, and finally, the Area Director. Additional language appearing in the 1962 Land Ordinance supports this interpretation. (*See id.* Art. 2, Sect. D(5) ("An assignment may be exchanged by the assignee for another

6

assignment with the approval of the Board of Trustees and the Area Director."); *id.* Art. 2, Sect. D(7) ("Assignments may be leased for a term not to exceed two (2) years with prior consent of the Board of Trustees and the approval of the Area Director.")). Additionally, two decisions from the Internal Board of Indian Appeals ("IBIA")—an agency within the Department of the Interior that is separate from the BIA but hears appeals from various BIA decisions—recognize that the Area Director is the final decision-maker on land allotment allocations on the Bishop Paiute, Big Pine, and Lone Pine reservations. *See Astells v. Sacramento Area Director*, 28 IBIA 122, 122, 1995 WL 507334, at *1 (IBIA 1995) (noting a land dispute had been remanded to the Area Director for a final determination); *Rogers v. Acting Deputy Assistant Sec'y–Indian Affairs*, 15 IBIA 13, 14–15, 1986 WL 80139, at *2 (IBIA 1986) (noting a land allotment was initially rejected by the BIA in 1978, but was ultimately renewed and granted approval by the Area Director in 1985).

Here, in moving for summary judgment in his favor plaintiff has presented no evidence indicating that any assignment he received to Lot #28 was ever approved by the Area Director. Plaintiff's Exhibit H is entitled "Lone Pine Paiute / Shoshone Indian Reservation Minutes of a Regular General Council Meeting – June 3, 1987." (Doc. No. 26 at 34.) Of relevance, the minutes state the following:

> OLD BUSINESS: Leonard Watterson's Land Dispute – <u>MOTION</u> by Dorothy Joseph to TABLE, because Madge Miller was advised to seek an attorney, Seconded by Nona Zucco, with <u>11</u> For, <u>25</u> Opposing, and <u>0</u> Abstentions. <u>MOTION DIED.</u>
>
> Chair then read a section of the 62 Ordinance pertaining to the death of assignee. As a solution the Chair then suggested to split the Assignments, <u>Consensus</u> of the Council not to. <u>MOTION</u> by Thelma Gilmore to go by the 62 Ordinance, Seconded by Effie Hackett, at this time the Chair stated this Motion would have to be more clear, because this Motion would give the Assignment to Leonard's Grandmother and not to Leonard. Chair then stated that the Tribe had given Pete Thomas 1 Acre. <u>MOTION</u> by Roger Button for Leonard Watterson to have the Original Assignment which consisted of 3 Acres, Seconded by Florence Gockley, with <u>27</u> For, <u>0</u> Opposing, and <u>8</u> Abstentions. <u>MOTION CARRIED.</u> Chair stated we will inform the BIA of this decision. Leonard requested for a surveyor to see just how many acres there are. Chair stated that the BIA does have monies for surveying and we should request to BIA for surveyin [sic] and also other portions need to be done.

7

(*Id.* at 35.) Meanwhile, plaintiff's Exhibit G reflects meeting minutes from the Owens Valley Board of Trustees meeting of August 19, 1993, and state in pertinent part:

> #3. LEONARD WATTERSON Land Assignment #28 Lone Pine Indian Reservation. Don O'Dell is the Attorney representing Leonard Watterson. A copy of the Land Assignment Application and minutes of approval is reviewed by Board Members present. Discussion of the land dispute regarding this assignment. Leonard Watterson is the designee of the original assignment holder Pete Thomas. Land assignment #28 was approved by the Owens Valley Board of Trustees December 11, 1975 for Leonard Watterson.
>
> There is a land assignment dispute between Leonard Watterson and Madge Miller assignment. The Land has a HUD home on it, that was originally built for Madge Miller and she has never occupied the house. At the present time, Julie Fritcher is living in the house. Charlotte Bacoch will check with OVIHA to find out how this transpired.
>
> All OVBT can do, is to follow the 1962 Land Ordinance. Will request a copy of the Standard Land Assignment Application for Madge Miller from the Lone Pine Tribal Office.
>
> MOTION: Allen Summers made a motion that the OVBT has reviewed Leonard Watterson's Standard Land Assignment Application for Block #28 and will upheld [sic] the previous OVBT approval made December 1975 as being assigned to Leonard Watterson. Alverna Piper seconded the motion. Motion carried unanimously.

(*Id.* at 31.) Additionally, plaintiff presents evidence that he was designated by his grandfather as the assignee for Lot #28 on July 6, 1974. (*Id.* at 29.)

Plaintiff's evidence shows, at best, that the local Indian Committee and Owens Valley Board of Trustees voted to approve a lot assignment to plaintiff on June 3, 1987, and re-approved that decision on August 19, 1993. Plaintiff has not come forward with any evidence, however, that he ultimately received an assignment to Lot #28 from the Area Director, as required by the 1962 Land Ordinance. Plaintiff's counsel was asked at the hearing on this motion whether any evidence that the Area Director granted plaintiff an assignment to Lot #28 existed. In response, counsel advised he had recently learned of "correspondence" from the BIA from the 1970s indicating the BIA did not believe the Area Director had the authority to grant such lot assignments. While the relevance of this proffer is uncertain, one thing is clear: plaintiff has presented no evidence on summary judgment that the Area Director ever approved the assignment

of Lot #28 to plaintiff. Under the 1962 Land Ordinance, plaintiff cannot claim entitlement to an assignment to Lot #28, absent evidence of this. Moreover, while plaintiff has presented evidence that he was designated to receive the assignment by his grandfather, the 1962 Land Ordinance specifically notes that an assignment "is not subject to inheritance." (1962 Land Ordinance, Art. 2, Sect. D(9).) At most, a designation of assignment gives the decedent's designee "preference in granting the assignment," not a right to the same. (*Id.*) Thus, though plaintiff believes he "received [Lot] #28" when his grandfather died (Doc. No. 26 at ¶ 8), the 1962 Land Ordinance makes clear there is no such automatic passage of assignment rights.

It is therefore clear that plaintiff's motion for summary judgment must be denied. Plaintiff fails to set forth evidence demonstrating his entitlement to Lot #28. To the contrary, it would appear from the court's review of the evidence that plaintiff's claim must ultimately fail on the merits, absent any evidence that the lot assignment was approved by the Area Director. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant."); *Norse v. City of Santa Cruz*, 629 F.3d 966, 971–72 (9th Cir. 2010) (observing district courts "unquestionably possess the power to enter summary judgment *sua sponte*," provided that sufficient notice and an opportunity to be heard is granted to the party against whom summary judgment would be entered); *see also Albino v. Baca*, 747 F.3d 1162, 1176–77 (9th Cir. 2014) (noting that a court must give "reasonable notice" prior to *sua sponte* granting summary judgment against a party, and "[r]easonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment"). In accordance with Rule 56(f), plaintiff will be given an opportunity to demonstrate why summary judgment should not be entered in favor of defendant both on the merits of his claim and for other, additional reasons set forth below.

**ORDER TO SHOW CAUSE**

As indicated at the hearing on the summary judgment motion, it appears to the court that this case either must be dismissed or summary judgment must be entered in favor of defendant for a variety of reasons. However, plaintiff will be given the opportunity to show cause why this case should proceed further.

*1. Failure to Exhaust Tribal Remedies*

There is a well-established requirement that parties must first exhaust all available tribal remedies prior to the federal courts exercising jurisdiction. *See Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013) (noting four limited exceptions to exhaustion of tribal remedies); *Marceau v. Blackfeet Housing Auth.*, 540 F.3d 916, 920–21 (9th Cir. 2008) (observing exhaustion of tribal remedies is "mandatory" so long as there is a claim "over which tribal court jurisdiction is 'colorable'"); *Crawford v. Genuine Parts Co., Inc.*, 947 F.2d 1405, 1407 (9th Cir. 1991) (deference generally owed to tribal courts except "when the disputed issue is not a 'reservation affair' or did not 'ar[i]se on the reservation'") (quoting *Stock West Corp. v. Taylor*, 942 F.2d 655, 660 (9th Cir. 1991)); *Burlington N. R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1244 (9th Cir. 1991) ("[B]oth the Supreme Court and this circuit have held that non-Indian defendants *must exhaust tribal court remedies* before seeking relief in federal court, even where defendants allege that proceedings in tribal court exceed tribal sovereign jurisdiction."). No exhaustion is required where there is no functioning tribal body from which recourse may be sought. *See Johnson v. Gila River Indian Cmty.*, 174 F.3d 1032, 1036 (9th Cir. 1999). However, parties must exhaust any tribal remedies that may be available to them, even if those remedies are administrative or executive, rather than judicial, in nature. *See Russ v. Dry Creek Rancheria Band of Pomo Indians*, No. C 06-03714 CRB, 2006 WL 2619356, at *1–2 (N.D. Cal. Sept. 12, 2006) (finding that, because plaintiffs could seek a remedy by way of a request to the Tribal Council to reverse the Tribe's Board of Directors, the exhaustion requirement was not met); *Middlemist v. Sec'y of U.S. Dep't of Interior*, 824 F. Supp. 940, 945 (D. Mont. 1993) (noting "both administrative *and* judicial remedies must be exhausted before proceeding in federal court").

While it is unclear whether the Lone Pine Indian Reservation has a tribal court, it appears there is a tribal government. Indeed, defendant asserts in her answer that this issue is in the process of being resolved by the Lone Pine Paiute-Shoshone Local Committee. (Doc. No. 7 at 16.) In addition, as noted in the 1962 Land Ordinance and discussed above, both the Owens Valley Board of Trustees and the Area Director oversee land assignments. (*See* 1962 Land

10

Ordinance, Art. 2, Sect. A(1)(B).) As also discussed above, the Area Director has apparently never previously been involved in this dispute, and the last involvement of the Board of Trustees occurred twenty-five years ago in 1993. Plaintiff has not demonstrated that he has exhausted all tribal remedies available to him. Plaintiff is therefore directed to show cause why this case should not be dismissed in its entirety due to his failure to exhaust tribal remedies.

        2.        *Failure to State a Claim*

The Declaratory Judgment Act is "procedural only," *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937), and "leav[es] 'substantive rights unchanged,'" *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 849 (2014) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). Therefore, the court must look to the substantive law on which the underlying claim is based in order to discern the requirements for bringing a claim and any applicable statute of limitations. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (noting the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction"). Plaintiff's first cause of action alleges defendant's entry onto Lot #28 "is an illegal interference with the possessory interest of Plaintiff and is therefore in violation of Federal Indian Allotment Trespass Statutes, specifically 25 C.F.R. part 162.106(a) and 163.29." (Doc. No. 1 at ¶ 20.) The first of these two provisions concerns agricultural leases which required approval by the BIA. *See* 25 C.F.R. § 162.106(a) (noting that the BIA will treat as trespass possession of property for which an agricultural lease is required but for which there is no agricultural lease); *see generally* 25 C.F.R. § 162.001 (defining the purpose of this subpart as "promot[ing] leasing on Indian land for housing, economic development, and other purposes," and noting the regulations set forth various leasing conditions). Plaintiff does not allege that defendant has any lease, let alone an agricultural lease, to Lot #28. Moreover, this regulation does not readily appear to create a private right of action under which plaintiff could bring suit, even if it is relevant in some way to this case.

The second regulation—25 C.F.R. § 163.29—concerns Indian forestry programs. *See* General Forestry Regulations, 60 Fed. Reg. 52,250, 52,260 (Oct. 5, 1995) (to be codified at 25 C.F.R. § 163.1 *et seq.*) ("The major purpose of the revision has been to provide uniform Indian

11

forestry program operating policy that complies with the National Indian Forest Resources Management Act."). In particular, the regulations concern "Indian forest land," which is defined as "Indian land . . . that are considered chiefly valuable for the production of forest products or to maintain watershed or other land values enhanced by a forest cover." 25 C.F.R. § 163.1. The specific regulation cited by plaintiff provides for civil penalties for trespass on Indian forest land. *See* 25 C.F.R. § 163.29(a)(3). However, plaintiff's complaint does not allege that Lot #28 is "Indian forest land" within the definition set forth in those regulations.

Accordingly, plaintiff is directed to show cause as to why any claim based on these two regulatory provisions should not be dismissed for failure to state a legal basis on which relief could be afforded.

### 3. *The Trespass, Nuisance, and Conversion Claims Appear to Fall Outside the Applicable Statute of Limitations*

Plaintiff alleges separate causes of action for trespass, nuisance, and conversion.[3] (Doc. No. 1 at ¶¶ 22–31.) Further, the complaint asserts that "Fritcher has been trespassing on the Assignment since before 1987." (*Id.* at ¶ 16.) Each of these causes of action has a three-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(b); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1279 (C.D. Cal. 2015) ("The statute of limitations period for a claim of conversion is three years."); *Cal. Dep't of Toxic Substance Control v. Payless Cleaners*, No. CIVS02-2389 LKK/DAD, 2007 WL 2580626, at *7 (E.D. Cal. Aug. 17, 2007) ("[T]he statute of limitations for ordinary nuisance claims is also three years."); *Spar v. Pacific Bell*, 235 Cal. App.

---

[3] Generally, in California, "conversion is a tort that may be committed only with relation to personal property and not real property." *Munger v. Moore*, 11 Cal. App. 3d 1, 7 (1970); *see also Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 134 (1990) (describing conversion as "a tort that protects against interference with possessory and ownership interests in personal property"); *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 812 (1994) ("The tort of conversion is an 'act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.'") (quoting *Oakes v. Suelynn Corp.*, 24 Cal. App. 3d 271, 278 (1972)). Some courts have suggested that the traditional distinctions between conversion and trespass have loosened in recent years. *See Hernandez v. Lopez*, 180 Cal. App. 4th 932, 940 (2009) ("These history-bound limitations [distinguishing conversion and trespass] have significantly eroded over time, and many courts and commentators have suggested they be further modernized to better fit contemporary circumstances."). Counsel advised at oral argument that plaintiff's conversion claim is based on the same underlying allegations, i.e., that defendant is trespassing.

3d 1480, 1485 (1991) ("[P]laintiff is required to bring one action for all past, present and future damages within three years after the permanent nuisance/trespass has occurred.").

Under some circumstances, district courts may *sua sponte* raise statutes of limitations issues. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993) (holding that a district court may "*sua sponte* dismiss a complaint as untimely so long as the defendant has not waived the defense"); *Hartfield v. Oregon State Bar*, 671 Fed. Appx. 456 (9th Cir. 2016)[4]; *Donell v. Keppers*, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted."); *see also Herbst v. Cook*, 260 F.3d 1039, 1042–43 (9th Cir. 2001) (holding district court has "the authority to raise the statute of limitations *sua sponte*" in connection with a § 2254 petition, but must give petitioner notice and opportunity to respond). Plaintiff is therefore directed to show cause why his trespass, nuisance, and conversion claims should not be dismissed as untimely under the applicable statute of limitations.[5]

### 4. *Plaintiff's Claim Appears to Fail on its Merits*

As indicated above, it appears that plaintiff's claim to Lot #28 must fail on the merits, since there is no evidence before the court that the Area Director ever approved an assignment of

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

[5] Plaintiff's counsel represented at oral argument that he believed the trespass here to be a continuing trespass. California law recognizes a distinction between continuing and permanent trespass. *See Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal. App. 4th 583, 592 (2007) ("A permanent trespass is an intrusion on property under circumstances that indicate an intention that the trespass shall be permanent . . . [whereas] a continuing trespass is an intrusion under circumstances that indicate the trespass may be discontinued or abated."). Because of the difference in the nature of the injury, the statute of limitations is applied differently. *See id.* ("Continuing trespasses are essentially a series of successive injuries, and the statute of limitations begins anew with each injury. In order to recover for all harm inflicted by a continuing trespass, the plaintiff is required to bring periodic successive actions."). The court is unclear how the alleged trespass in this case could be "continuing," since the complaint alleges "Fritcher has been trespassing on the Assignment since before 1987," suggesting she has been continually in possession of the lot since that time. (*See* Doc. No. 1 at ¶ 16.) Counsel may address this issue in response to this order to show cause.

Lot #28 to plaintiff. Plaintiff is therefore also directed to show cause why summary judgment should not be entered in favor of defendant on the merits.

     *5.     Leave to Amend*

Plaintiff suggested at the hearing on the motion for summary judgment that the granting of leave to amend the complaint is appropriate here. If plaintiff wishes to amend the complaint, he is directed to show cause as to why the court should permit such an amendment at this late date, and why such an amendment would not be futile.

Plaintiff will be given fourteen (14) days in which to show cause in writing, filed with the court and served on defendant, as to why this case and the claims brought should proceed, given the issues identified above. Any evidentiary material plaintiff wishes the court to consider must be filed on the court's docket.

Finally, the court notes that it has identified numerous deficiencies which plaintiff must address in order to proceed with this suit. The Eastern District of California labors under one of the heaviest caseloads in the country and can ill afford to expend judicial resources unnecessarily. Plaintiff is cautioned that pursuing litigation without a good faith belief that it is reasonably supported by both facts and law may result in the imposition of sanctions. *See Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986) (holding that Rule 11 "discourages wasteful, costly litigation battles by mandating the imposition of sanctions when a lawyer's position, after reasonable inquiry, will not support a reasonable belief that there is a sound basis in law or in fact for the position taken"); *Altmann v. Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 955–57 (E.D. Cal. 2012); *Zimmerman v. United States*, 198 F.R.D. 535, 538–39 (E.D. Cal. 2000); *see also Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir. 2007) ("A district court may impose sanctions *sua sponte*.").

## CONCLUSION

For the reasons discussed above:

1. Plaintiff's motion for summary judgment filed on May 29, 2018 (Doc. No. 20) is denied;
2. Within fourteen (14) days of service of this order, plaintiff is directed to show cause in writing:

14

a. Why all Doe defendants should not be dismissed;
   b. Why this complaint should not be dismissed due to plaintiff's failure to exhaust his tribal remedies;
   c. Why plaintiff's claims under 25 C.F.R. §§ 162.106(a) and 163.29 should not be dismissed for failure to state a claim;
   d. Why plaintiff's trespass, nuisance, and conversion claims are not barred by the statute of limitations given the allegations of the complaint;
   e. Why summary judgment should not be entered in favor of defendant on the merits;
   f. Why plaintiff should be permitted to amend his complaint at this stage of the proceedings and why any such amendment would not be futile; and

3. Other than the filing date noted above, all currently scheduled dates in this case are hereby vacated, including the dates set for final pretrial conference and trial, to be rescheduled if necessary.

IT IS SO ORDERED.

Dated: **August 15, 2018**

UNITED STATES DISTRICT JUDGE